People v Moore (2026 NY Slip Op 00859)

People v Moore

2026 NY Slip Op 00859

Decided on February 17, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 17, 2026

Before: Kern, J.P., Friedman, Rodriguez, Pitt-Burke, Rosado, JJ. 

Ind. No. 3965/18|Appeal No. 5372M-5945|Case No. 2024-06873|

[*1]The People of the State of New York, Appellant,
vRobert Moore, Defendant-Respondent. The District Attorneys Association of the State of New York, Amicus Curiae.

Alvin L. Bragg, Jr., District Attorney, New York (Anna Notchick of counsel), for appellant.
Caprice R. Jenerson, Office of the Appellate Defender, New York (Samuel Steinbock-Pratt of counsel), for respondent.
Mary Pat Donnelly, District Attorney, Albany and Darcel D. Clark, District Attorney, Bronx (David M. Cohn of counsel), for amicus curiae.

Judgment of resentence, Supreme Court, New York County (Juan M. Merchan, J.), rendered September 13, 2024, resentencing defendant, as a second violent felony offender, to a term of four years, affirmed.
The People's argument that defendant should have been adjudicated a persistent violent felony offender because Erlinger v United States (602 US 821 [2024]) does not apply to the instant case is unpreserved as the prosecutor declined to make that argument at resentencing. "[A] reviewable question of law exists only if it was presented to the trial court in the first instance" (People v Cabrera,41 NY3d 35, 42 [2023]). Moreover, a party may not "sit[] idly by while error is committed, thereby allowing the error to pass into the record uncured, and yet claim the error on appeal" (People v Bailey, 32 NY3d 70, 78 [2018] [internal quotation marks and brackets omitted]). The People, like any other litigant, are subject to the preservation requirement (see People v Tabarez, 69 NY2d 663, 665 [1986] [where "[t]he People did not argue" that the defense of extreme emotional disturbance was inapplicable to attempted murder, they did not "preserve[] the issue for review"], citing People v Villani, 59 NY2d 781, 783-784 [1983]).
The People "did not argue" in the resentencing letter or the resentencing hearing that Erlinger's holding is inapplicable to the instant case (Tabarez, 69 NY2d at 665), nor did they not object when the court confirmed that they were not arguing the Erlinger issue (see Bailey, 32 NY3d at 78). The People stated in their resentencing letter that, "[a]lthough there is an argument that Erlinger's holding does not apply here at all, the People continue to recommend, in an excess of caution, that this Court exercise its inherent power to convene a jury to determine defendant's predicate status." At the resentencing hearing, the court stated its understanding that the People were not arguing the Erlinger issue and the People agreed. The People confirmed to the court that the primary argument they were making was that the court should empanel a jury to make the relevant tolling determinations pursuant to CPL 400.16(2). Alternatively, the People argued that the court should sentence defendant as a second violent felony offender. Therefore, the People failed to preserve the issue for our review.
The dissent would find that the People sufficiently presented the issue of Erlinger's applicability to the sentencing court in two different respects. First, the People requested that the court empanel a jury to make the relevant tolling determinations necessary to sentence defendant as a predicate violent felony offender. Second, the People alerted the court to the existence of the Erlinger issue and set forth the reasoning supporting the view that Erlinger is inapplicable.
While these facts are true, neither demonstrates that the People sufficiently presented the issue of Erlinger's applicability to the sentencing court. In Cabrera, the Court of Appeals explained that the preservation requirement "helps ensure that errors are avoided or corrected at the earliest possible opportunity" and that it "gives the parties an essential opportunity to probe relevant factual and legal issues, thereby ensuring that the record before this Court reflects a full airing of the points that bear upon an ultimate merits determination" (41 NY3dat 42-43 [internal citations omitted]). The Court further cautioned against reaching the merits of a claim "on an underdeveloped record and without the benefit of careful consideration by the courts and the parties below" (id. at 51).
Contrary to the dissent's conclusion, the purpose of the preservation requirement was not served here. By expressly declining to argue that Erlinger does not apply, the People deprived defendant and the court of the opportunity to "probe [the] relevant. . . legal issues" regarding Erlinger's applicability (id. at 42). This resulted in a record that does not "reflect[] a full airing of the points that bear upon an ultimate merits determination" because defendant could not further develop his position on Erlinger where the People did not argue against its applicability (id. at 43 [emphasis added]). Moreover, contrary to the dissent's claim that the sentencing court concluded that Erlinger applied to the relevant tolling determinations, the court did not rule on the Erlinger issue at all because the People declined to argue it. Therefore, making a determination regarding the Erlinger issue on this appeal would require us to do so under the precise circumstances the Court of Appeals cautioned against in Cabrera.
The dissent also claims that, by declining to reach the merits of the People's appeal, our decision will "extend[] the disruption of New York's sentencing system for recidivist felons and potentially depriv[e] the public of the enhanced protection from habitual felony offenders the system is intended to provide." It goes on to argue that, because the appellant in this case is seeking to vindicate the constitutionality of a statute, any doubt concerning the preservation of the constitutional issue should be resolved in favor of reviewability. There is, however, no exception to the preservation requirement based on the existence of an important public policy issue (see Cabrera, 41 NY3d at 42) and the dissent cites no precedent to support the proposition that any doubt concerning the preservation of a constitutional issue should be resolved in favor of reviewability. We note that the Court of Appeals has already once declined to reach the same Erlinger issue on the basis that it was not properly preserved, signaling the importance of adhering to the preservation requirement with regard to this specific issue even if doing so would result in potentially undesirable policy consequences (see People v Hernandez, 43 NY3d 591, 597 [2025]).
We note that the court, as the People urge, could not have simply empaneled a jury to make the relevant fact-findings regarding tolling pursuant to its inherent authority under Judiciary Law § 2-b(3). A court's discretion under that statute is limited to devising new procedures in "unusual circumstances" and "exceptional cases," which do not exist here (see People v Krieg, 139 AD3d 625, 626 [1st Dept 2016], lv denied 28 NY3d 932 [2016]).
We further note that a jury was not required to make the findings necessary to sentence defendant as a second violent felony offender based on his 2008 conviction of attempted rape in the first degree, because the interval between that conviction and
defendant's commission of the instant offense was less than 10 years, and so no tolling calculation was involved. 
All concur except Friedman, J. who dissents in a memorandum as follows:

    FRIEDMAN, J. (dissenting)
 

This appeal by the People places at issue the viability of New York's enhanced sentencing scheme for recidivist felons, the application of which generally depends on whether the defendant was convicted of one or more qualifying felonies within a lookback period of 10 years (or, in certain cases, 15 years) before the commission of the crime for which he or she is being sentenced (see Penal Law § 70.04[1][b][iv] [10 years for second violent felony offender]; Penal Law § 70.06[1][b][iv] [10 years for second felony offender]; Penal Law § 70.07[3] [15 years for second child sexual assault felony offender]; Penal Law § 70.08[1][b] [10 years for persistent violent felony offender, incorporating by reference the criteria of Penal Law § 70.04(1)(b)]). In each case, the lookback period is extended by the exclusion of "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of the commission of the present felony" (Penal Law § 70.04[1][b][v]; Penal Law § 70.06[1][b][v]; see also Penal Law § 70.07[3] [incorporating by reference the criteria of Penal Law § 70.06(1)(b)]; Penal Law § 70.08[1][b] [incorporating by reference the criteria of Penal Law § 70.04(1)(b)]). The exclusion of periods of incarceration from the lookback period is commonly referred to as tolling.
The primary question on this appeal is whether, under the United States Supreme Court's recent decision in Erlinger v United States (602 US 821 [2024]), the Fifth and Sixth Amendments' guarantee of a jury trial extends to the calculation of periods of tolling in measuring the lookback period used in determining whether a defendant is subject to enhanced sentencing as a recidivist felon — in this case, as a persistent violent felony (PVF) offender, to whom a 10-year lookback period applies (see Penal Law § 70.08[1][b], incorporating by reference the criteria of Penal Law § 70.04[1][b]).[FN1] If it is constitutionally required that a jury determine the tolling, New York's procedure for making persistent violent felony offender determinations will be substantially disrupted, as Criminal Procedure Law (CPL) § 400.15(7) (addressing second violent felony offenders, but made applicable to PVF offenders by CPL § 400.16[2]) provides that such determinations "must" be made at a hearing "before the court without a jury."[FN2] The impact on New York's criminal justice system — which, according to the amicus curiae, held in custody approximately 13,500 second felony offenders and approximately 1,500 persistent felony offenders as of January 1, 2021, collectively accounting for approximately 43.8% of all state prisoners — would be grave.
In my view, as more fully discussed below, the sentencing court erroneously concluded that Erlinger applied to the tolling determination required to bring one of defendant's two prior violent felony convictions within the 10-year lookback period.[FN3] Because the court correctly concluded that it had no power under the CPL to empanel a jury to make a tolling determination, it sentenced defendant as a second violent felony offender, based solely on his more recent violent felony conviction, which was within the lookback period without the need for a tolling determination.[FN4] The People appeal to us from the court's application of Erlinger, seeking to have the sentence vacated and the matter remanded so that defendant can be resentenced as a PVF offender.
Unfortunately, the majority avoids addressing the merits of the People's appeal — thereby extending the disruption of New York's sentencing system for recidivist felons and potentially depriving the public of the enhanced protection from habitual felony offenders that the system is intended to provide — on the ground of lack of preservation. While I very much agree that the People, like any other litigant, are bound by the rule that "a reviewable question of law exists only if it was presented to the trial court in the first instance" (People v Cabrera, 41 NY3d 35, 42 [2023]), in this case, it is a fact that the question of Erlinger's applicability to tolling determinations under our enhanced sentencing scheme was presented to the sentencing court.[FN5] This is true in two respects.
First, as more fully discussed below, the People unquestionably took the position before the sentencing court that defendant should be sentenced as a PVF offender. Even though they supported the request for such sentencing on an erroneous legal theory — namely, that the court could empanel a jury to make the tolling determination — the issue of defendant's eligibility for PVF offender status was undeniably placed before the court.[FN6] The majority cites no authority holding that the question of a party's entitlement to relief is not preserved for review if the party requests the relief but bases the request on an erroneous legal theory. That the People requested the empanelment of a jury to make the PVF offender adjudication should not bar them from arguing on appeal for their entitlement to such an adjudication on an alternative basis that they had placed before the sentencing court.
Second, as more fully described below, the People plainly brought to the sentencing court's attention that it is an open issue whether Erlinger applies to tolling determinations in recidivist sentencing cases, and that, as of the time of the sentencing (in September 2024), at least one other Justice of Supreme Court, New York County, had concluded that Erlinger does not apply in this context. Not only did the People alert the court to the existence of this unresolved issue, they set forth the reasoning supporting the view that Erlinger is inapplicable. Moreover, before the court had decided how it would proceed, the People presented to it a revised predicate statement supporting PVF status, together with the supporting documentation, instead of waiting to present such materials to a jury. The presentation of these materials to the court before the empanelment of a jury would have had no purpose unless the People intended to offer the court the opportunity to make the tolling determination itself, if it concluded that such a course would not offend Erlinger. True, perhaps out of a misguided "excess of caution" (as stated in their response to defendant's resentencing memorandum), the People did not take a position before the court on the question of Erlinger's applicability, but they plainly did "present [that question of law] to the trial court in the first instance" (Cabrera, 41 NY3d at 43), thereby preserving it for our review on appeal.
I now turn to the facts relevant to this appeal. After a jury trial, defendant was found guilty of one count of persistent sexual abuse (Penal Law § 130.53) based on an incident alleged to have occurred on August 21, 2018. Using the predicates of defendant's May 18, 1984 conviction for burglary in the second degree and his October 8, 2008 conviction for attempted rape in the first degree, the court adjudicated him a PVF offender and sentenced him to a prison term of four years to life. Upon defendant's appeal, however, the People conceded that his adjudication as a PVF offender had been erroneous, as the predicate felony statement on which the adjudication was based omitted certain periods of tolling for incarceration that were necessary to extend the ten-year look-back period to encompass the 1984 burglary conviction. Given this concession, this Court, while otherwise affirming the conviction, vacated the sentence and remanded the matter to Supreme Court for further sentencing proceedings (People v Moore, 228 AD3d 491, 491, 493 [1st Dept 2024], lv denied 42 NY3d 972 [2024], cert denied — US &mdash, 145 S Ct 1203 [2025]).[FN7]
After our remand, but before defendant was resentenced, the United States Supreme Court issued its Erlinger decision. Erlinger concerned a prosecution under the federal Armed Career Criminal Act of 1984 (ACCA), which, as described by the principal dissent in that case, "imposes a minimum sentence on a defendant who previously was convicted of at least three violent felonies committed on different occasions — and who then, after the three prior violent felony convictions, unlawfully possessed a firearm" (Erlinger, 602 US at 851 [Kavanaugh, J., dissenting]). Erlinger did not disturb the longstanding rule, recognized in Almendarez-Torres v United States (523 US 224 [1998]), that the Sixth Amendment "permits a judge to find what [prior] crime, with what elements, the defendant was convicted of" (id. at 839 [internal quotation marks omitted]; see also Apprendi v New Jersey, 530 US 466, 490 [2000] [while holding that a jury must determine the defendant's motivation for committing the charged offense for purposes of enhancing the penalty under a hate crime statute, the Court recognized that "the fact of a prior conviction" may be found by the court for purposes of sentence enhancement]). The Erlinger majority held, however, that the defendant in that case "was entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt," notably adding that "we decide no more than that" (id. at 835; see also id. at 852 ["the Court today concludes that only a jury may make the different-occasions determination"] [Kavanaugh, J., dissenting]).
After Erlinger was issued, defendant, through his resentencing memorandum, demanded that he not be resentenced as a PVF offender. He pointed out that any adjudication under Penal Law § 70.08 would require a tolling calculation to determine whether the 1984 burglary conviction could be brought within the 10-year look-back period under Penal Law § 70.04(1)(b)(iv).[FN8] Defendant argued that, under Apprendi, Erlinger and other United States Supreme Court decisions construing the constitutional right to a jury trial, the determination of his total time of incarceration between the 1984 conviction and the commission of his 2018 offense could be made only by a jury, which was not provided for by the CPL.
In their responding letter, the People continued to seek a PVF offender adjudication, noting that they had filed and served an amended predicate felony statement that included the periods of incarceration that had been mistakenly omitted from the original predicate felony statement, along with supporting documentation. However, in light of Erlinger's extension of the right to a jury trial to "facts pertaining to a defendant's prior criminal convictions,"they took the position, "out of an abundance of caution," that the factual question of the amount of time defendant had been incarcerated since the 1984 conviction "must be resolved at a jury trial." Accordingly, the People "ask[ed] the Court to empanel a jury under Judiciary Law § 2-b(3) and conduct a jury trial on the issue of whether defendant qualifies for sentencing as a persistent violent felony offender." In the alternative, the People requested that the court "sentence defendant as a second violent felony offender" under Penal Law § 70.04, for which the October 2008 conviction — an offense that qualified as a predicate without any tolling calculation, as previously noted — would be sufficient.
While the People, "in an excess of caution," asked for relief based on the conservative assumption that the Erlinger holding applied to the tolling calculation in this case, they brought to the court's attention that "there is . . . an argument that Erlinger's holding does not apply here at all." The People wrote in their letter:
"On the other hand, we note that on July 24, 2024, in the case of People v Desmond Smith (NY Co Ind. No. 2755/2018), Justice Maxwell Wiley determined that sentencing courts are still permitted to make the simple factual findings of periods of incarceration relevant to tolling despite Erlinger. Notably, Erlinger itself did not involve a judicial determination of such elementary facts; rather, the finding that the Supreme Court held must be reached by the jury was a complicated and judgment-laden determination of whether a defendant's past crimes occurred 'on multiple occasions' . . . . In cases pre-dating Erlinger, the Court likewise held that juries were required to resolve similarly challenging factual determinations about a defendant's past criminality . . . None of these cases thus involved a factual determination as basic as whether,with 'tolling' defendant's prior crimes come within the statutory timeframe, which requires only determination of length of time defendant was incarcerated — information [that] can be conclusively determined by unimpeachable government records."
At the resentencing hearing on September 13, 2024, the People confirmed to the court that they were seeking empanelment of a jury to decide the tolling issue arising in connection with an adjudication of defendant as a PVF offender, and that, in the alternative, they asked that he be sentenced as a second violent felony offender, which would not require any tolling calculation. Defense counsel agreed that Erlinger required a jury determination on tolling but objected to the empanelment of a jury on the ground that it "would actually be contrary to what the statute provides." The court declined to empanel a jury and sentenced defendant, as a second violent felony offender, to a term of four years of incarceration (see Penal Law § 70.04[3][d], as in effect on September 13, 2024).[FN9] The People have taken an appeal from the judgment.
As discussed above, it is my view that the People's request for a PVF adjudication, by itself, was enough to preserve for our review the issue of Erlinger's applicability to the tolling issue in this case, given that the People's request for empanelment of a jury to make a determination on tolling could not be granted. In any event, I believe that the People's resentencing letter, by alerting the court to the point of view that Erlinger does not apply to tolling determinations in the context of New York's recidivist felon sentencing scheme, and offering a sufficiently detailed discussion of the basis for that point of view, preserved the issue of Erlinger's applicability for our review on appeal. Far from "sitting idly by while error is committed" (People v Bailey, 32 NY3d 70, 78 [2018] [internal quotation marks and brackets omitted]), the People presented the sentencing court "in the first instance" (Cabrera, 41 NY3d at 42) with precisely the issue they seek to have resolved on appeal. At the resentencing, the People fully presented the position on the Erlinger issue they now urge upon us on appeal, offering the court "a full airing of the points that bear upon an ultimate merits determination" (id. at 43).
The only step the People failed to take was, having brought their present position to the court's attention, adopting that position as their own at the resentencing hearing. Still, the court was fully aware of the issue and had an opportunity, if it saw fit, to adopt the position for which the People now advocate. The defense, too, was alerted to the fact that Erlinger's applicability was an open issue, was informed of the support for that position, and had an opportunity to refute that position.[FN10] Since the People had presented to the court the correct view of Erlinger's applicability, the defense could have — and should have — offered any refutation it deemed appropriate, and the court could have — and should have — considered and adopted that position, whether or not the People themselves had formally adopted it. The purpose of the preservation requirement — that the parties be given "an essential opportunity to probe the relevant factual and legal issues" (id. at 43) — was fully served here, inasmuch as the issue was purely legal in nature (no factual issue bears on the question of whether Erlinger applies to a tolling determination) and the parties had an opportunity to air it fully before the court. Although the People's manner of proceeding in this instance was not ideal, it sufficed, in my view, to preserve the issue for our review.
Notably, in Cabrera, the Court of Appeals observed that the requirement of preservation is most strictly enforced where the appellant is challenging the constitutionality of "duly enacted legislation" (Cabrera, 41 NY3d at 43 [internal quotation marks omitted], quoting People v Baumann & Sons Buses, Inc., 6 NY3d 404, 408 [2006]). Here, it is the appellant that is seeking to vindicate the constitutionality of a statute (specifically, CPL § 400.15[7], which requires that a hearing on a defendant's status as a second or persistent violent felony offender be conducted "before the court without a jury"), and — while I agree with the majority that the standard for reviewability does not turn on whether the appellant seeks to overturn or to preserve a statute — any doubt concerning the preservation of the constitutional issue should be resolved in favor of reviewability.
The majority's reliance on People v Hernandez (43 NY3d 591 [2025]) is misplaced. In Hernandez, the Court of Appeals held that the defendant (who had been sentenced as a PVF offender years before Erlinger was decided) could not raise an Erlinger issue concerning the determination of tolling on appeal because, "[a]s a threshold matter, defendant did not contest his criminal history, including the relevant periods of incarceration" before he was adjudicated (id. at 597; see CPL 400.15[3], [4], [5], incorporated by reference in CPL 400.16[2]; see also People v Gomez, 236 AD3d 603, 604-605 [1st Dept 2025], lv denied 43 NY3d 1045 [2025] [same]). Thus, the Hernandez defendant failed to preserve an Erlinger issue because he failed to raise the underlying factual issue of the accuracy of the allegations of the People's predicate statement.[FN11] This holding has no relevance to the People's preservation of the Erlinger issue in the present case, in which they sought not only a PVF offender adjudication, but also brought to the court's attention the legal argument that Erlinger does not apply to tolling determinations in the enhanced sentencing context, albeit without adopting that position themselves at that juncture.
Turning to the substance of the People's argument, I agree with them that the holding of Erlinger has no application to the present case. Although the majority opinion in Erlinger makes a number of broad statements concerning the limitations on a court's ability to make findings of fact in a sentencing proceeding, the specific holding of the case is that a sentencing court cannot constitutionally make a factual determination that characterizes the defendant's past criminal conduct. Thus, Erlinger held that it was unconstitutional for a sentencing court to "decide that a defendant's past offenses were committed on separate occasions under a preponderance-of-the-evidence standard" (602 US at 825). In reaching this conclusion, the Erlinger decision stressed that the "separate occasions" inquiry under ACCA, the relevant federal statute, was of an "intensely factual nature," involving "a range of facts, including whether the defendant's past offenses were committed close in time, whether they were committed near to or far from one another, and whether the offenses were similar or intertwined in purpose and character" (id. at 828 [internal quotation marks omitted]); see also id. at 834 ["deciding whether those past offenses occurred on three or more different occasions is a fact-laden task"]; id. at 840-841 ["a sensible ACCA occasions inquiry" may often require "a qualitative assessment about the character and relationship of the offenses"] [internal quotation marks omitted]). Erlinger also cautions judges against taking it upon themselves "to decide what the defendant . . . actually did, or the means or manner in which he committed his offense in order to increase the punishment to which he might be exposed" (id. at 839-840 [internal quotation marks and brackets omitted]).
Indeed, as the amicus argues, if defendant's present position on this issue were correct, it is difficult to understand why it was not asserted until Erlinger was decided, since even Justice Gorsuch, the author of the majority opinion, denied that he was breaking any new ground. "Really," Justice Gorsuch wrote in Erlinger, "this case is as nearly on all fours with Apprendi and Alleyne [v United States, 570 US 99 (2013)] as any we might imagine" (602 US at 835). Apprendi, as previously noted, concerned the determination of the motivation of the defendant's criminal conduct under a hate crime statute. Alleyne concerned the determination of whether the defendant had brandished, or merely carried, a firearm in the course of committing his offense. Thus, Apprendi and Alleyne — like Erlinger and completely unlike this case, as discussed below — each concerned a factual inquiry seeking to characterize, describe or evaluate the defendant's criminal conduct. This being the case, there is no justification for departing from the many Court of Appeals decisions over the last 25 years that have upheld New York's recidivist sentencing scheme against challenges launched under Apprendi (see e.g. People v Porto, 16 NY3d 93, 102 [2010]; People v Bell, 15 NY3d 935, 935-936 [2010], cert denied sub nom. Bell v New York, 563 US 979 [2011]).
In stark contrast to Erlinger, the issue committed to the court by CPL 400.15(7) with which we are concerned here — the determination of the amount of time a defendant spent incarcerated between a previous conviction and the commission of the charged offense — is an essentially rote arithmetic calculation to be made based on certified public records. This determination does not involve any assessment of a defendant's conduct or culpability. The only relevant information are the records of the official actions of the government vis-À-vis defendant — the date on which an institution took custody of him, the date on which it released him, and the number of days in between. This exceedingly narrow inquiry is of a piece with the determination of the fact of a prior conviction and the elements of the underlying offense, which Erlinger expressly left in the hands of the courts, where they had been placed by the Supreme Court in Almendarez-Torres. Requiring juries to make findings on such objective, cut-and-dried facts concerning when and where a defendant was incarcerated would do nothing to further the principle that a jury of a defendant's peers should assess "the truth of every accusation" against him or her (Apprendi, 530 US at 477 [internal quotation marks and italics omitted]) — inasmuch as no accusation is at issue. Defendant cites no case in which such a bland, ministerial determination was held to be constitutionally committed to a jury.
For the foregoing reasons, I would reach the merits of the People's appellate argument and reject defendant's argument that Erlinger forbids a sentencing court from itself making a tolling determination in calculating the 10-year lookback period upon a defendant's adjudication as a PVF offender.[FN12] I would therefore reverse the judgment, vacate the sentence imposed on defendant as a second violent felony offender, and remand the matter for defendant's resentencing as a persistent violent felony offender. Accordingly, I respectfully dissent from the majority's affirmance of the judgment. M-5945 — People of the State of New York v Robert Moore Motion by the District Attorneys Association of the State of New York for permission to file an amicus brief, granted.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 17, 2026

Footnotes

Footnote 1: The Fifth and Sixth Amendments to the United States Constitution are made applicable to the states through incorporation into the Fourteenth Amendment.

Footnote 2: The same issue arises with adjudications of second child sexual assault felony offenders (see CPL § 400.19[6][a]) and second felony offenders (see CPL § 400.21[7][a]).

Footnote 3: An adjudication as a PVF offender requires that the defendant have two prior violent felony convictions within the 10-year lookback period, as extended by any tolling for periods of incarceration (see Penal Law § 70.08[1][a], [b]).

Footnote 4: An adjudication as a second violent felony offender requires that the defendant have one prior violent felony conviction within the 10-year lookback period, as extended by any tolling for periods of incarceration (see Penal Law § 70.4[1][a], [b][iv]-[v]).

Footnote 5: Contrary to the majority's implication, I do not claim that there is any "exception" to the preservation requirement for issues of great public importance.

Footnote 6: The majority mischaracterizes my position as being that the People preserved the Erlinger issue by "request[ing] that the court empanel a jury to make the relevant tolling determinations necessary to sentence defendant as a predicate violent felony offender." My position is that the People preserved the issue by seeking to have defendant adjudicated as a persistent violent felony offender, not by requesting the empanelment of a jury.

Footnote 7: On the present appeal, defendant does not dispute that all three of the offenses at issue (persistent sexual abuse, burglary in the second degree and attempted rape in the first degree) are violent felonies for purposes of the PVF offender statute.

Footnote 8: No tolling issue arises with respect to the October 2008 attempted rape conviction, which was entered less than 10 years before the commission of the August 2018 offense charged in this proceeding. 

Footnote 9: At the resentencing hearing, defense counsel also objected, "for the purpose of preserving [defendant's] rights in the future," to his being sentenced as a second violent felony offender "on the basis of any prior convictions," on the ground that Erlinger, as counsel read it, "forecasted, . . . pretty strongly that [the Supreme Court] is likely to overrule [Almendarez-]Torres [the Supreme Court decision approving judicial determination of the fact of a prior conviction] in the near future." However, defendant has not taken an appeal from his resentencing.

Footnote 10: Thus, I reject the majority's claim that the defendant and the court were "deprived . . . of the opportunity to probe the relevant legal issues regarding Erlinger's applicability" (internal quotation marks, ellipsis and brackets omitted).

Footnote 11: Notably, in the present case, defendant also failed to controvert the allegations in the People's predicate PVF offender statement but, as pointed out in the amicus brief, this was because the court "short-circuited the statutory process by ruling that, under Erlinger, it could not make a tolling determination," which "put the cart before the horse." However, the People apparently did not object to this manner of proceeding and do not seek reversal on this ground.

Footnote 12: I note that, in a very similar case, a California appellate court reached the same conclusion, holding that Erlinger did not prevent a sentencing judge from making a finding, based on certified records, that the defendant had served a prison term for a prior conviction, which was an aggravating factor under California law (see People v Lark, 2024 WL 4523469, *11 [Cal App 3d Dist. Oct. 18, 2024, No. C097702] ["The concern in Erlinger was that a court may not engage in factfinding as to the details of the means or manner of commission of a defendant's prior conviction. We have no such concern here"]).